605 A.2d 447

Geraldine HERSHEY, Petitioner,

v.

UNEMPLOYMENT COMPENSATION BOARD
OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 10, 1992.

Decided March 10, 1992.

Ram M. Cheerath, for petitioner.

John E. Herzog, for respondent.

Clyde W. Vedder, for intervenor.

Before DOYLE and FRIEDMAN, JJ., and BARRY, Senior Judge.

FRIEDMAN, Judge.

Geraldine M. Hershey appeals from an order of the Unemployment Compensation Board of Review (UCBR) reversing a referee's determination and declaring her ineligible for benefits under Section 402(e) of the Unemployment Compensation Law.[1] We affirm.

Hershey was employed by Community Transit, Inc. (CTI) as a part-time secretary, having been hired by CTI's predecessor organization on September 10, 1987. In January 1991, because of staff reductions necessitated by financial concerns, CTI assigned Hershey the additional responsibility of picking up the mail at the post office. Hershey was displeased at having to use her personal car to make the 5–10 mile daily round trip because of concern over the added "wear and tear" on her car and her increased insurance liability. On March 27, 1991, Hershey notified Mr. Eric Menzer, CTI's general manager, of her dissatisfaction with the mail pickup situation.

In response to her concerns, CTI offered Hershey three alternative means for mail pickup: (1) she could use a company van which was usually available; (2) she could use a company sedan, parked one mile from her work place; or (3) she could use her own car.[2] However, none of these proposals satisfied Hershey; she found the van too difficult to drive safely and was reluctant to drive her own car, whether the trip was to the post office or to the location of the company sedan.

Unable to reach any agreement, CTI terminated Hershey. The Office of Employment Security (OES) denied Hershey's application for unemployment compensation benefits, determining that Hershey was ineligible under section 402(e) of

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e).

2. Alternative 2 required Hershey to drive her own car to a second CTI office where the company sedan was stored, use the company car for the trip to the post office, then switch vehicles and return to her work place in her own car. Under alternative 2 or 3, as in the past, CTI reimbursed Hershey 26½ cents per mile when she drove her personal car to do this work.

the act because she had been discharged for willful misconduct in connection with her work. This determination was reversed by a referee following a hearing at which both parties appeared and testified. CTI appealed to the UCBR which reversed the referee and again denied benefits based on section 402(e) of the act.[3] Hershey appeals.

The UCBR denied unemployment compensation to Hershey based on section 402(e) of the act which provides in pertinent part:

An employe shall be ineligible for compensation for any week—

. . . .

(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act . . .

█ Hershey argues that the UCBR erred in finding that her conduct rose to the level of willful misconduct. Willful misconduct is not defined under the act; however, it has been interpreted by case law as an act of wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of the standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interests or of the employee's duties and obligations to the employer. *Lee Hospital v. Unemployment Compensation Board of Review,* 139 Pa.Commonwealth Ct. 28, 589 A.2d 297 (1991); *Giglio v. Unemploy-*

3. The order actually states:
 The decision of the Referee is reversed and benefits are denied to the extent provided in *Richards.*
 The UCBR felt it necessary to include the reference to *Richards v. Unemployment Compensation Board of Review,* 85 Pa.Commonwealth Ct. 90, 480 A.2d 1338 (1984) in its order because Hershey was a part-time employee. We see no reason to apply *Richards* to the fact situation here and question the UCBR's inclusion of this case in its order denying benefits. However, because this additional language has no practical impact on our decision, we will not address it further.

*ment Compensation Board of Review,* 126 Pa.Commonwealth Ct. 471, 560 A.2d 271 (1989).

 Under section 402(e), the employer bears the burden of proving willful misconduct. Where the party bearing this burden has prevailed below, our scope of review on appeal is limited to determining whether an error of law has been committed or whether necessary findings of fact are unsupported by substantial evidence. *Kretsch v. Unemployment Compensation Board of Review,* 83 Pa.Commonwealth Ct. 169, 476 A.2d 1004 (1984). Whether an employee has been discharged for willful misconduct is a question of law subject to our review. *Waltz v. Unemployment Compensation Board of Review,* 111 Pa.Commonwealth Ct. 54, 533 A.2d 199 (1987).

 We have determined previously that during the course of employment, an employer may modify or change the tasks that an employee originally was hired to perform. Where this change is reasonable, an employee's refusal to abide by the employer's decision may constitute disqualifying willful misconduct. *Kretsch; Jackim v. Unemployment Compensation Board of Review,* 63 Pa.Commonwealth Ct. 5, 437 A.2d 775 (1981); *Tucker v. Unemployment Compensation Board of Review,* 14 Pa.Commonwealth Ct. 262, 319 A.2d 195 (1974).

 Here, the UCBR found CTI's work request was reasonable and we agree. When financial difficulties force an employer to cut back on personnel, it is not improper to expect remaining employees to fill in as needed and perform important duties which otherwise would go undone.[4]

 Although CTI's work request was reasonable, Hershey could refuse to comply and still remain eligible for

---

4. Mr. Menzer testified that it was impractical to store the company sedan at Hershey's work place because the employees who worked at the second location were the primary users of the automobile. Further, only the second worksite offered indoor storage for the vehicle. Mr. Menzer also stated that the responsibility to pick up the mail logically fell to Hershey as CTI's lowest paid and only remaining part-time employee (18a).

unemployment compensation benefits if she established the existence of good cause for her refusal. *Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 351 A.2d 631 (1976); *Jackim; Gwin v. Unemployment Compensation Board of Review*, 58 Pa.Commonwealth Ct. 69, 427 A.2d 295 (1981). To determine whether Hershey has satisfied this burden, we must balance the reasonableness of CTI's assignment against the reasonableness of Hershey's refusal.[5] *Frumento.*

"If the employer's request is reasonable in the context of the particular employment relationship and the employee's refusal is unjustified, such conduct evidences a disregard of the standards of behavior an employer expects of his employees." *Kretsch*, 83 Pa.Commonwealth Ct. at 172, 476 A.2d at 1006, quoting *Hughes v. Unemployment Compensation Board of Review*, 40 Pa.Commonwealth Ct. 422, 424, 397 A.2d 494, 495–96 (1979).

Hershey contends that her refusal to pick up the mail was justified under the circumstances here. Hershey argues that she was unable to drive the company van safely because of its large size and her inability to adjust the side mirrors or back up properly. Moreover, Hershey felt that the 26½ cents mileage reimbursement [6] was insufficient to compensate her for the increased insurance risk and wear and tear to her car, making it unreasonable for CTI to demand that she use her personal vehicle to perform her work.

We agree that Hershey reasonably refused to drive the company van to the post office because the difficulties it posed made it dangerous for her to operate. Certainly, CTI should not expect Hershey to compromise her personal safety in order to perform a work assignment. However,

5. We note here that the concept of reasonableness is not static. Therefore, the determination of what is reasonable must be made anew for each unique set of circumstances. Difficult economic times, faced by the nation's businesses in general and CTI in particular, can influence this balance.

6. The amount of reimbursement reflected CTI's written policy to pay the current IRS rate for mileage.

we do not believe that Hershey was justified in refusing to use her personal car to pickup the mail where CTI reimbursed her for mileage.[7] Therefore, the UCBR did not err in concluding that Hershey was offered suitable means to accomplish CTI's reasonable task, so that her conduct constituted willful misconduct. Accordingly, we affirm its order.

## ORDER

AND NOW, this 10th day of March, 1992, the order of the Unemployment Compensation Board of Review, dated August 20, 1991, is affirmed.

---

**7.** The claimant in *Eckenrode v. Unemployment Compensation Board of Review,* 111 Pa.Commonwealth Ct. 289, 533 A.2d 833 (1987), also asserted as good cause for her refusal to perform newly assigned duties the requirement that she use her personal automobile to travel regularly to a second worksite approximately fifteen miles away. However, we dismissed this contention as meritless because the employer agreed to reimburse claimant 26 cents per mile for her travel. Our reasoning was similar in *Scheib v. Workmen's Compensation Appeal Board (Ames Department Store),* 143 Pa.Commonwealth Ct. 193, 598 A.2d 1032 (1991), where we held that a claimant's reluctance to use personal transportation to travel to work outside her preferred geographical area was not sufficient reason to find a job unsuitable alternative employment for an injured employee where the job was otherwise within her physical capabilities.