IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian C. Kaszuba,                          :
                         Petitioner        :
                                           :
             v.                            :
                                           :
Unemployment Compensation                  :
Board of Review,                           :   No. 686 C.D. 2015
                         Respondent        :   Submitted: October 30, 2015


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE MARY HANNAH LEAVITT, Judge[1]
          HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                FILED: March 22, 2016


              Brian C. Kaszuba (Claimant) petitions this Court for review of the
Unemployment Compensation (UC) Board of Review's (UCBR) March 31, 2015
order affirming the Referee's decision denying Claimant UC benefits under Section
402(e) of the UC Law (Law).[2]  Claimant presents one issue for this Court's review:
whether the UCBR erred in determining that Claimant committed willful misconduct.
After review, we affirm.

              Claimant was last employed by Dickson City Borough's (Employer)
Public Works Department as a full-time foreman/mechanic from June 1992 through
November 20, 2014.  On October 16, 2014, Employer's manager Cesare Forconi
(Forconi) issued a directive that Claimant was not to enter Employer's building

              [1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt
became President Judge.
              [2] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §
802(e) (referring to willful misconduct).

except on official business.  That same day, intending to file a grievance claiming that the directive was discriminatory,[3] Claimant went to Forconi's office for information needed to file the grievance, and a verbal altercation between Claimant and Forconi ensued.  Due to the altercation, Employer placed Claimant on paid administrative leave.

By October 17, 2014 letter, Claimant was informed that he should remain available for interviews during his paid administrative leave.  Claimant was scheduled to appear for a meeting/interview with Forconi and the chief of police on October 28, 2014 at 2:00 p.m.  Claimant did not appear.  Claimant was rescheduled to appear for a meeting/interview with Forconi and the chief of police on October 29, 2014 at 10:00 a.m., and again failed to appear.  Claimant was again rescheduled to appear at 3:00 p.m. on October 29, 2014 for a meeting/interview with Forconi and the chief of police, but again did not attend.  On October 30, 2014, Claimant was hand-delivered a Loudermill Notice[4] requesting that he provide Employer with a written statement regarding the October 16, 2014 incident no later than 3:00 p.m. on November 4, 2014.  Claimant did not provide a written statement as required, and refused to attend any of the scheduled meetings on the advice of his union attorney.

On November 12, 2014, Claimant was notified by hand-delivered letter that he was suspended without pay, pending employment termination.  The recommendation for Claimant's employment termination was scheduled before Employer's council on Tuesday, November 20, 2014, at 5:30 p.m., at a public meeting.  Claimant attended Employer's council meeting and witnessed the vote of

---

[3] Claimant did file said grievance.

[4] "In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), the Supreme Court held that since a public employee has a property interest in his employment, under the United States Constitution's Due Process Clause, he must be afforded at least notice and a hearing before that employment is terminated." *Donaldson v. Butler Cnty.*, 118 A.3d 1253, 1257 n.7 (Pa. Cmwlth. 2015).

2

his employment termination. On November 21, 2014, Claimant was notified by hand-delivered letter that his employment was terminated due to insubordination in conjunction with his refusal to attend scheduled fact-finding interviews.

Claimant applied for UC benefits. On December 11, 2014, the Altoona UC Service Center found Claimant ineligible for UC benefits under Section 402(e) of the Law. Claimant appealed and, on January 13, 2015, a Referee hearing was held. On January 15, 2015, the Referee affirmed the UC Service Center's determination. Claimant appealed to the UCBR. On March 31, 2015, the UCBR affirmed the Referee's decision. Claimant appealed to this Court.[5]

Claimant first argues that the UCBR's Findings of Fact 4 through 10 are not supported by substantial evidence. This Court has consistently held:

> Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party, in this case, the [e]mployer, giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

*Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999).

The UCBR's Findings of Fact 4 and 5 state:

> 4. On October 16, 2014, [C]laimant was placed on paid administrative leave after a verbal altercation with [Employer's] manager over the manager's directive that [C]laimant not come into [Employer's] building except on official business.

---

[5] "This Court's review is limited to determining whether the findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether errors of law were committed." *Stugart v. Unemployment Comp. Bd. of Review*, 85 A.3d 606, 608 n.3 (Pa. Cmwlth. 2014).

3

5. [C]laimant was informed via letter on October 17, 2014 that he should remain available for interviews during his paid administrative leave.

UCBR Dec. at 1.

At the Referee hearing, Forconi testified:

ET [Employer's representative] Okay, now I'm going to call your attention to Referee's Exhibit #11, which is a letter issued on November 17, 2014.[6] Are you familiar with that letter?

EW1 [Forconi] Yes.

. . . .

ET . . . could you summarize it for the record?

EW1 Yes, this letter was sent out **placing [Claimant] on paid administrative leave** while [Employer] had a chance and opportunity to do an investigation into the incident and to determine what actually happened and what course of action to take.

ET I'm going to note that on the second page, the last basically it's one sentence there, there is – basically what were you asking [Claimant] to do?

EW1 **We asked him to make himself available during normal work hours from Monday through Friday in case he was needed to come in for an interview**.

ET Okay, and the next sentence, 'until then'?

EW1 Until then, I expect his complete compliance and cooperation for this direction.

Reproduced Record (R.R.) at 82 (emphasis added); *see also* Ex. 11, R.R. at 8.

Forconi's testimony is relevant evidence upon which a reasonable mind could base the conclusions that Claimant was placed on paid administrative leave and

---

[6] Exhibit 11 evidences that the letter is dated October 17, 2014, not November 17, 2014. Reproduced Record at 8.

4

that he was directed to remain available for interviews. Thus, substantial evidence supports Findings of Fact 4 and 5.

The UCBR's Findings of Fact 6, 7 and 8 read:

6. [C]laimant was scheduled to appear for a meeting /interview with [Employer's] manager and the chief of police on October 28, 2014, at 2:00 p.m. and did not appear.

7. [C]laimant was rescheduled to appear for a meeting/interview with [Employer's] manager and the chief of police on October 29, 2014, at 10:00 a.m. and did not appear (Exhibit 15).

8. [C]laimant was again rescheduled for a third time to appear at 3:00 p.m. on October 29, 2014 for a meeting/interview with [Employer's] manager and [the] chief of police and again did not appear (Exhibit 18).

UCBR Dec. at 2. Forconi further testified:

ET Okay, so let's start with **the originally**[-]**scheduled interview on October 28, 2014**. Is that correct?

EW1 Yes.

ET At 2:00 p.m.?

EW1 **At 2:00 p.m.**

ET Was Mr. -- excuse me, was [] Claimant notified, . . . notified of the 2:00 p.m. October 16 interview?

EW1 Yes.

ET How was [Claimant] notified?

EW1 He was notified by [the] police chief with a letter and [inaudible].

. . . .

R[eferee] Was it a letter, or was it verbal?

. . . .

5

EW1 I don't know.

. . . .

ET Okay, but **there was a letter issued on October 28, 2014, correct?**

EW1 **Yes.**

ET **Scheduling a second interview?**

EW1 **Yes**.

ET And do you know how this letter -- whether or not [Claimant] was given a copy of this letter?

EW1 Yes.

ET And how was that?

EW1 It was hand[-]delivered.

. . . .

ET Going to -- I have two copies of that. Okay, I believe that this is a letter of October 29, which is Exhibit #18. . . .

. . . .

ET Okay, and what is the substance of that letter?

EW1 Basically this letter is saying that **he failed to appear**[]. . . [.]

ET He being?

EW1 [Claimant] at 10:00 a.m. and asking him to appear at 3:00 [p.m.] to reschedule.

ET Just so that I'm clear, **the 10:00 a.m. that you're discussing here is the same 10:00 a.m. interview that was set forth in the October 28, 2014 letter**?

EW1 **Yes, that's correct**.

ET Okay, **so at this point, we're at interview number two that did not occur and we're scheduling interview number three**?

6

EW1 Yes.

ET Okay, and was this letter delivered to [Claimant]?

EW1 Yes.

ET **And the letter clearly states that there will be a 3:00 p.m. interview that day at 3:00 p.m.** [sic]? **I'm sorry, that day being October 29 at 3:00 p.m.**

EW1 **Yes.**

R.R. at 83-85 (emphasis added); *see also* Exs. 15, 15A, R.R. at 16, 17. Forconi's testimony is relevant evidence upon which a reasonable mind could base the conclusions that Claimant was scheduled to appear at interviews at 2:00 p.m. on October 28, 2014, and at 10:00 a.m. and 3:00 p.m. on October 29, 2014, and did not appear. Thus, substantial evidence supports Findings of Fact 6, 7 and 8.

The UCBR's Findings of Fact 9 and 10 are as follows:

9. On October 30, 2014, [C]laimant was notified via a hand[-]delivered letter (Exhibit 21) of a Loudermill Notice requesting he provide any information to [E]mployer regarding the incident of October 16, 2014 via a sealed envelope by November 4, 2014, no later than 3:00 p.m.

10. [C]laimant refused to attend any of the scheduled meetings and did not provide a written statement as required on the advice of his union attorney.

UCBR Dec. at 2.

At the Referee hearing, Forconi testified:

ET Now, we're going to the letter of October 30, 2014, which is -- I believe, Exhibit #21. I'm looking on the second page.

. . . .

ET Okay, can you summarize this letter for us please?

EW1 This [is] for a Loudermill [phonetic] hearing, and[]. . . [.]

7

ET Can you explain just briefly to the Referee what a Loudermill hearing is?

EW1 That would be an opportunity for him, for [Claimant], to tell his side of the story to the municipality and to myself.

ET And did you briefly set out the initial incident as well?

EW1 Yes.

ET Okay, and the fact that there had been these two[7] other interviews scheduled, correct?

EW1 Yes.

ET Okay, are you -- going to that last sentence, last paragraph, are you indicating that [Claimant] still has one more opportunity to provide basically his side of the story?

EW1 Yes.

ET Okay, **was any information provided to you by [Claimant], or did [Claimant] make himself available for that interview**?

EW1 **No.**

R.R. at 85 (emphasis added); *see also* Ex. 21, R.R. at 35-36.  Forconi's testimony is relevant evidence upon which a reasonable mind could base the conclusions that Claimant was notified by October 30, 2014 hand-delivered Loudermill Notice to provide information regarding the incident and he failed to deliver a written statement.  Thus, substantial evidence supports Findings of Fact 9 and 10.

Claimant next argues that the UCBR erred in determining that Claimant's conduct was insubordination/willful misconduct because there is no requirement in the Collective Bargaining Agreement (CBA) that an employee has to attend employment meetings or provide a written statement.  It appears that Claimant is arguing that because he filed a grievance, Employer was not permitted to require

---

[7] The October 30, 2014 Loudermill Notice referred to the **three** scheduled interviews.  *See* R.R. at 35.

8

him to attend meetings because that was not part of the grievance procedure and/or there is no rule in the CBA requiring it.

It is uncontested that on October 16, 2014, Forconi told Claimant he could not be in Employer's building other than for official business. It is also undisputed that Claimant felt that Forconi's action constituted discrimination and that he filed a grievance against Employer on that basis. Lastly, it is acknowledged that when Claimant went to Forconi's office to request information for his grievance, the verbal altercation ensued. Claimant's paid administrative leave arose from that altercation. The grievance and the administrative leave were based on two different incidents. The issue before the UCBR was whether Claimant's refusal to respond to Employer's directive constituted willful misconduct.

> Section 402(e) of the Law provides that an employee is ineligible for unemployment compensation benefits when his unemployment is due to discharge from work for willful misconduct connected to his work. The employer bears the burden of proving willful misconduct in an unemployment compensation case. Willful misconduct has been defined as (1) an act of wanton or willful disregard of the employer's interest; (2) a deliberate violation of the employer's rules; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or a disregard of the employee's duties and obligations to the employer.

*Dep't of Transp. v. Unemployment Comp. Bd. of Review*, 755 A.2d 744, 747-48 n.4 (Pa. Cmwlth. 2000) (citation omitted).

> It is well settled that an employee's direct refusal to comply with a request of his employer can constitute willful misconduct under Section 402(e) of the Law. However, before we can decide whether such noncompliance amounts to willful misconduct in a particular case, **we must evaluate not only the reasonableness of the employer's request under the circumstances, but also the employee's reason for noncompliance**. If the employee's behavior was

9

justifiable or reasonable under the circumstances, it cannot be considered willful misconduct. In other words, if there was 'good cause' for the employee's action, he cannot be deemed guilty of willful misconduct.

In an unemployment compensation case involving a charge of willful misconduct, the employer bears the burden of proving the charge. But, if the claimant seeks to justify the behavior in issue, or to show that it was reasonable, he must bear the proof burden in that respect.

*Simpson v. Unemployment Comp. Bd. of Review,* 450 A.2d 305, 308 (Pa. Cmwlth. 1982) (citations omitted; emphasis added).

Here, the UCBR opined:

[C]laimant was not discharged for the incident of October 16, 2014. He was discharged for his refusal to either meet with [Forconi] and [the] chief of police or to provide a written statement regarding the incident. **[Forconi] was [C]laimant's supervisor's supervisor. His request to meet with** [C]**laimant was reasonable**, although there was no explanation provided as to why the chief of police should have been present, as no criminal charges were filed.

However, [C]laimant refused to respond or to cooperate in any way with [E]mployer's directive. The [CBA] did provide for a grievance procedure, which [C]laimant utilized. However, it did not preclude management from meeting with employees in such situations. [C]laimant could have requested union representation at the meeting. He could have also requested that the chief of police not be involved, **[C]laimant did not have good cause for ignoring the directive, even on the advice of union counsel.**[8]

---

[8] The Dissent states:

In his brief, Claimant . . . assert[ed] that 'the Court must look to the employee's justification for his actions to determine whether they are reasonable,' **and then argues that his reliance on union counsel's advice provided the necessary justification**. Claimant's Brief at 17. Stated another way, Claimant contends that he had good cause for his conduct. The [UCBR] did not address this issue.

10

Dissenting Op. at 2. The Dissent maintains that under Pa.R.A.P. 1513(d)(5) Claimant did not waive this issue by failing to raise it in his Petition for Review because the UCBR found Claimant refused to attend the fact-finding interviews on the advice of his union attorney. The Dissent further claims that Claimant also adequately raised and developed the issue in his brief. *See* Dissenting Op. at 2-3 n.1.

However, Claimant did not argue to the UCBR or in his brief that his reliance on advice of counsel was good cause for his conduct. Rather, Claimant consistently argued that because the meetings were in violation of the Collective Bargaining Agreement, he was justified in not attending. As stated in Claimant's brief: "Therefore, [Claimant] was not insubordinate, nor did he commit any willful misconduct **because [E]mployer was not acting in compliance with the Collective Bargaining Agreement in ordering him to do so**." Claimant Br. at 18 (emphasis added).

Initially, Claimant never made the argument to the UCBR that his reliance on advice of counsel was good cause to violate Employer's directives. *See Schneider v. Unemployment Comp. Bd. of Review*, 523 A.2d 1202, 1204 (Pa. Cmwlth. 1987) ("Not having been raised before the [UCBR], this issue is not properly before us and therefore, it is deemed to be waived.").

Moreover, Claimant's Petition for Review does not mention his reliance on advice of counsel in any context whatsoever. "The 2014 amendments to Pa.R.A.P. 1513(d) . . . are intended to preclude a finding of waiver if the court is able, based on the certified record, to address an issue not within the issues stated in the petition for review **but included in the statement of questions involved and argued in a brief**." Pa.R.A.P. 1513 Official Note-2014 (emphasis added). Here, Claimant did not raise the argument that advice of counsel was justification/good cause for his insubordination in his Statement of Questions Involved nor is it even remotely suggested therein. Because Claimant "did not raise this issue in his statement of questions involved; . . . it is waived. *Williams v. Workers'* [*Comp.*] *Appeal* [*Bd.*] *(USX Corporation–Fairless Works),* 862 A.2d 137, 141 (Pa. Cmwlth. 2004) ('Claimant has failed to raise this issue anywhere within his Statement of the Questions Presented, and for that reason, it is waived.'); Pa.R.A.P. 2116(a) ('No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.')" *Glunk v. Dep't of State*, 102 A.3d 605, 611 n.17 (Pa. Cmwlth. 2014). Further, with the exception of one sentence, the words "advice of counsel" are not mentioned anywhere in the Argument of Claimant's brief. Claimant's "one sentence does not constitute a developed, reasoned, supported, or even intelligible argument. [Therefore,] [t]he matter is waived for lack of development." *Commonwealth v. Spotz*, 18 A.3d 244, 281 n.21 (Pa. 2011).

Finally, the Dissent quotes background portions of Claimant's brief to support its position that Claimant developed the argument. However, Claimant never even raised the issue that his reliance on advice of counsel was good cause for violating Employer's directives, let alone developed the argument. Accordingly, because no such argument was made in Claimant's appeal before the UCBR, in Claimant's Petition for Review or in Claimant's brief filed with this Court, it is waived.

11

UCBR Dec. at 3 (emphasis added). We discern no error in the UCBR's analysis. Accordingly, because Employer's directive was reasonable and Claimant did not meet his burden of proving that ignoring said directive was reasonable or justified, Claimant's conduct constituted willful misconduct.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian C. Kaszuba,                          :
                 Petitioner       :
                                              :
           v.                                 :
                                              :
Unemployment Compensation                  :
Board of Review,                           :     No. 686 C.D. 2015
                   Respondent     :

# O R D E R

AND NOW, this 22nd day of March, 2016, the Unemployment Compensation Board of Review's March 31, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian C. Kaszuba,                          :
                Petitioner            :
                                       :
         v.                     :  No. 686 C.D. 2015
                                       :  Submitted:  October 30, 2015
Unemployment Compensation                  :
Board of Review,                           :
                Respondent            :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE MARY HANNAH LEAVITT, Judge
                  HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE LEAVITT                                    FILED: March 22, 2016

Respectfully, I dissent.

This case involves two separate but inextricably linked disciplinary matters. The first involved Claimant's claim that Borough Manager Cesare Forconi's directive that Claimant not enter Employer's building except on official business was discriminatory and in violation of the CBA. Claimant grieved that directive. The second disciplinary matter was the verbal altercation between Claimant and Forconi that occurred when Claimant attempted to gather information for his grievance. The altercation precipitated a series of fact-finding interviews, which Claimant refused to attend. The Board found that Claimant was discharged for "insubordination in conjunction with his refusal to attend [the] fact-finding interviews." Board Adjudication at 2; Finding of Fact No. 14 (F.F. __). Claimant argues on appeal that Employer's demand that he attend the interviews was unreasonable and that his refusal to attend was justified.

The Board held that Claimant failed to prove that Employer's directive to attend the fact-finding interviews was unreasonable. Indeed, the CBA was silent on this phase of discipline, neither sanctioning nor prohibiting such interviews by Employer. I agree with the Board's legal conclusion that Employer's directive was reasonable.

Nevertheless, as the majority points out, the reasonableness of Employer's request is only part of the analysis. The Court must also evaluate

> the employee's reason for noncompliance. If the employee's behavior was justifiable or reasonable under the circumstances, it cannot be considered willful misconduct. In other words, if there was 'good cause' for the employee's action, he cannot be deemed guilty of willful misconduct.

Majority slip op. at 9-10 (quoting *Simpson v. Unemployment Compensation Board of Review*, 450 A.2d 305, 308 (Pa. Cmwlth. 1982)). Here, the Board found, as fact, that Claimant "refused to attend any of the scheduled meetings … on the advice of his union attorney." F.F. 10. The question is whether Claimant committed willful misconduct by following his attorney's advice.

In his brief, Claimant repeats the above-cited *Simpson* principle, asserting that "the Court must look to the employee's justification for his actions to determine whether they are reasonable," and then argues that his reliance on union counsel's advice provided the necessary justification. Claimant's Brief at 17.[1]

---

[1] The majority concludes that Claimant waived this argument by not preserving it in his petition for review and further did not develop it in his brief. I respectfully disagree.

Recent amendments to the rules of appellate procedure state that "the omission of an issue from the [petition for review] shall not be the basis for a finding of waiver if the court is able to address the issue based on the certified record." Pa. R.A.P. 1513(d)(5). This Court is able to address Claimant's advice of counsel argument because the Board itself found, based on

**(Footnote continued on the next page . . .)**

MHL-2

Stated another way, Claimant contends that he had good cause for his conduct. The Board did not address this issue.

Normally the issue of good cause presents a question of law. *Dunkle v. Unemployment Compensation Board of Review*, 496 A.2d 880, 882 (Pa. Cmwlth. 1985). Nevertheless, I am not prepared to announce a blanket ruling that following the advice of one's union attorney is good cause for refusing to comply with a reasonable employer directive. Given the unique facts presented in this case, where the parties were already in an antagonistic relationship because of Claimant's grievance, I would remand for further consideration of Claimant's good cause argument, including an analysis of the applicability of the CBA to the separate disciplinary matter that grew out of the grieved matter.

_____
MARY HANNAH LEAVITT, Judge

---

**(continued . . .)**
the testimonial record, that Claimant refused to attend the fact-finding interviews on the advice of his union attorney.

Claimant adequately raised and developed the issue in his brief. On page 13, he states that he "contacted the Union attorney who advised him that he should not attend the meeting because nothing in his contract or the [CBA] required attending any sort of 'employment meeting,'" and cites to the relevant portion of the hearing transcript. Claimant's Brief at 13. In the next paragraph, Claimant describes "two more subsequent meetings … for which [Claimant] did not appear on the advice of counsel." *Id*. Then, as noted above, on page 17 of his brief, Claimant discusses the "justification for his actions" and states, "based upon the union attorney's determination that the employer could not require [Claimant] to attend such meetings … [Claimant] did not attend the meetings." *Id*. at 17. I am not sure what more Claimant could have done to develop what is really a straightforward argument.

MHL-3